Troutman Sanders LLP
Ryan C. Tuley (Cal. Bar No. 198249)
ryan.tuley@troutmansanders.com
5 Park Plaza, Suite 1400
Irvine, CA 92614-2545
Telephone: (949) 622-2700
Facsimile: (949) 622-2739

Troutman Sanders LLP
Eileen King Bower, *Pro Hac Vice*
eileen.bower@troutmansanders.com
Brian P. Cummings, *Pro Hac Vice*
brian.cummings@troutmansanders.com
55 West Monroe, Suite 3000
Chicago, IL 60603
Telephone: (312) 759-1920
Facsimile: (312) 759-1939

*Attorneys for Defendant Continental Casualty Company*

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THOMAS DILLON, as Court-Appointed Receiver for Vesta Strategies, LLC and Excalibur 1031 Group, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CONTINENTAL CASUALTY COMPANY, an Illinois corporation,<br><br>Defendant. | Case No. C 10-05238 LHK<br><br>**DEFENDANT CONTINENTAL CASUALTY COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE 2004 VESTA POLICY**<br><br>Date: December 20, 2012<br>Time: 1:30 p.m.<br>Ctrm: 8, 4th Floor |

# TABLE OF CONTENTS

**Page**

I. BACKGROUND ..... 1
A. Complaint and Motion to Dismiss ..... 1
B. Plaintiff's Original Motion, Subsequent Discovery and Pending Motions for Summary Judgment ..... 1
II. ARGUMENT ..... 3
A. Summary Judgment Standard ..... 3
B. Evidentiary Standard ..... 3
C. Plaintiff's Pending Motion is Based on Disputed Material Facts ..... 4
1. The Vesta Operating Agreement Does Not Establish Terzakis' "Exclusive Domination and Control" Over Vesta ..... 5
2. Plaintiff's Assertion that Terzakis and Robert Estupinian Together Exerted "Exclusive Control" Over Vesta And Directed Its Affairs Is Contradicted By Terzakis' Own Deposition Testimony ..... 6
3. Plaintiff Has Offered No Admissible Evidence to Prove that Vesta Exchanger Funds Were Transferred to Terzakis During the 2004 Vesta Policy Period ..... 7
4. Plaintiff's Straw Man: No One Could Have Stopped Terzakis and Robert Estupinian From Improperly Transferring Exchange Funds ..... 10
5. Plaintiff's Assertion That No One But Terzakis and Robert Estupinian Had Authority to Contact the Insurer On Behalf of Vesta Is Not Supported By the Record ..... 12
D. Law of the Case Doctrine Does Not Apply ..... 13
E. Plaintiff's Pending Motion Must Be Denied For Reasons Set Forth in Continental's Pending Motion ..... 16
III. CONCLUSION ..... 17

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Back v. Allstate Ins. Co.*,
2005 U.S. Dist. LEXIS 34676 (E.D. Cal. July 13, 2005) .......... 3

*City of L.A. v. Santa Monica BayKeeper*,
254 F.3d 882 (9th Cir. 2001).......... 14

*Clemmer v. Hartford Insurance Co.*,
22 Cal. 3d 865 (1978) .......... 16

*Continental Lab. Prods., Inc. v. Medax Int'l, Inc.*,
1999 U.S. Dist. LEXIS 15383 (S.D. Cal. Aug. 12, 1999) .......... 14

*Estate of Gonzales v. Hickman*,
2007 U.S. Dist. LEXIS 83702 (C.D. Cal. Apr. 13, 2007).......... 14

*Hegler v. Borg*,
50 F.3d 1472 (9th Cir. 1995).......... 14

*J.C. Penney Cas. Ins. Co. v. M.K.*,
52 Cal. 3d 1009 (1991) .......... 16

*Manufactured Home Communities, Inc. v. County of San Diego*,
655 F.3d 1171 (9th Cir. 2011).......... 15

*Pepper v. United States*,
131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011) .......... 13

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
944 F.2d 597 (9th Cir. 1991).......... 14

*United States v. Cote*,
51 F.3d 178 (9th Cir. 1995).......... 14

*Vivus, Inc. v. Kercso*,
977 F. Supp. 1004 (N.D. Cal. 1997) .......... 3

**STATUTES**

Insurance Code Section 533.......... 16

Internal Revenue Code Section 1031.......... 2

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## TABLE OF AUTHORITIES

**RULES**

Federal Rules of Civil Procedure, Rule 56(e) .................... 4

Federal Rules of Evidence, Rule 1006 .................... 7

N.D. Cal. Local Rule 7-5 .................... 3, 4

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Continental Casualty Company ("Continental") submits the following Memorandum of Points and Authorities in Opposition to the Motion for Summary Judgment on the 2004 Vesta Policy of Plaintiff Thomas Dillon, as Receiver for Vesta Strategies, LLC ("Vesta") and Excalibur 1031 Group, LLC ("Excalibur").

## I. <u>BACKGROUND</u>

### A. <u>Complaint and Motion to Dismiss</u>

On November 18, 2010, Plaintiff initiated this action against Continental for declaratory judgment and breach of contract (the "Complaint"). (Dkt. No. 1.) Plaintiff seeks to recover as damages amounts allegedly lost by the sixteen Vesta and two Excalibur exchangers who had previously been identified in Exhibits A and B to the June 11 Proof of Loss. (*Id*. at Ex. 14.) Continental filed a motion to dismiss the Complaint, arguing that Plaintiff failed to state a claim under the Continental policies at issue because the alleged losses were not sustained or discovered during the relevant policy periods. (Dkt. No. 15.) Plaintiff concedes that the Vesta Policy only provides coverage for covered loss discovered on or before August 15, 2004 and that the loss alleged in this case was not "discovered" until several years later. Nevertheless, Plaintiff opposed Continental's motion on several grounds. First, Plaintiff argued that there were "two distinct sets of thefts": the first occurring during the Continental policy periods, causing an "increasing deficit in the Exchange Fund trust accounts" maintained by Vesta and Excalibur; and a second set of thefts involving newly deposited Exchange Funds to allow older exchanges to close. (Dkt. No. 28, at 1.) The Court ultimately denied Continental's Motion to Dismiss, finding that (1) the Complaint sufficiently alleged a covered loss and (2) that the allegations, if true, alleged a theory of adverse domination that could potentially apply to equitably toll the discovery period in the policies until the Receiver was appointed. (Dkt. No. 43) (the "Continental MTD Order").

### B. <u>Plaintiff's Original Motion, Subsequent Discovery and Pending Motions for Summary Judgment</u>

Prior to the close of discovery, on March 28, 2012, Plaintiff filed a Motion for Summary Judgment on the 2004 Policy issued to Vesta by Continental ("Plaintiff's Original Motion").

(Dkt. No. 62.) Plaintiff argued that the Continental MTD Order is the "law of the case" and that the Court found that "embezzlement of IRC section 1031 Exchange Funds by the principles of Vesta was expressly covered under the $5 million 2004 policy issued to Vesta by Continental." (*Id*. at 6.) Plaintiff further argued that he need only show the following to obtain judgment in his favor: 1) at least $5 million was embezzled during the Continental policy period; and 2) Vesta was adversely dominated by the thieving wrongdoers such that the period for discovering the loss was equitably tolled until the Receiver was appointed in December 2009.[1] (*Id*. at 3, 6-7.) Plaintiff relied on the declarations of several witnesses in support of his Original Motion, including Declarations of John Terzakis, Peter Ye, Kristine Carlos, and Susan Woo. (*See* Dkt. Nos. 63-66.)

On April 2, 2012, the Court denied Plaintiff's Original Motion as "premature" and, at the same time, allowed the parties additional time to complete discovery. (Dkt. No. 68) (granting in part Continental's Motion for Protective Order or, Alternatively, Sanctions, and extending the discovery-cut off through July 20, 2012). Between April 2, 2012 and July 20, 2012, Continental deposed Terzakis, Ye, Carlos, and Woo.

On August 31, 2012, Plaintiff and Continental each filed motions for summary judgment. (Dkt. No. 75 ["Plaintiff's Pending Motion" or "Pl.'s Pending Mot."] and Dkt. No. 80 [the "Continental Motion" or "Continental Mot."].)[2] Incredibly, instead of revising the statement of "undisputed facts" to reflect his witnesses' deposition testimony, Plaintiff's Pending Motion is the same as his Original Motion and includes the same declarations in support. (*Compare* Dkt. Nos. 63-66, ***with*** Dkt. No. 76 ["Terzakis Dec."], Dkt. No. 77 ["Ye Dec."], Dkt. No. 78 ["Carlos Dec."], Dkt. No. 79 ["Woo Dec."].) Plaintiff's failure to correct the factual basis for his Pending Motion is inexcusable. As set forth below, not only are the facts upon which Plaintiff bases his Pending

[1] Continental does not accept Plaintiff's premise that these factors are all Plaintiff must prove to prevail here. Nevertheless, as set forth herein, Plaintiff cannot even make that factual showing.

[2] Continental re-noticed its Motion before this Court. (Dkt. No. 88.) The Continental Motion is broader than Plaintiff's Pending Motion because Continental seeks summary judgment with respect to the 2004 Vesta Policy and policies issued to Excalibur. Plaintiff only seeks summary judgment with respect to the 2004 Vesta Policy.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Motion in dispute, they are repeatedly contradicted by deposition testimony of his own witnesses and, at times, inconsistent with the very documents attached.

As set forth in the Continental Motion, the undisputed facts obtained during the course of discovery reveal that Plaintiff cannot meet his burden of proving that covered loss was sustained or discovered during the 2004 Vesta Policy period, nor can Plaintiff meet the difficult burden of proving that adverse domination applies in this case. Continental refers the Court to the Continental Motion for a detailed analysis of the facts and law which support summary judgment in its favor. To avoid duplicative arguments and briefing, Continental does not repeat all of the facts and legal support for its position in this memorandum. Rather, this opposition identifies numerous inconsistencies and evidentiary problems contained in Plaintiff's version of the "undisputed" facts submitted in support of his Pending Motion. Because Plaintiff has clearly failed to present undisputed facts to support his Pending Motion, summary judgment in Plaintiff's favor must be denied. In addition, for the reasons set forth below, the "law of the case" doctrine does not apply.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## II. ARGUMENT

### A. Summary Judgment Standard

"Summary judgment cannot be granted where a genuine dispute exists as to any material fact." *Vivus, Inc. v. Kercso*, 977 F. Supp. 1004, 1010 (N.D. Cal. 1997) (denying motion for summary judgment where facts at issue were heavily disputed). A dispute about a material fact will be considered genuine "if a reasonable jury could return a verdict for the non-moving party." *Id.* Notably, when determining a motion for summary judgment, "the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor." *Id. See also Back v. Allstate Ins. Co*., 2005 U.S. Dist. LEXIS 34676, at *14 (E.D. Cal. July 13, 2005) ("The evidence of the opposing party is to be believed . . . and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party[.]") (internal citations omitted).

### B. Evidentiary Standard

Plaintiff's motion rests upon an unsound foundation. Local Rule 7-5 provides the

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

evidentiary standard for facts supporting a motion. The rule states as follows:

> (a) Affidavit or Declaration Required. Factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record. Extracts from depositions, interrogatory answers, requests for admission and other evidentiary matters must be appropriately authenticated by an affidavit or declaration.
>
> (b) Form. An affidavit or declaration may contain only facts, must conform as much as possible to the requirements of Fed. R. Civ. P. 56(e), and must avoid conclusions and argument. Any statement made upon information or belief must specify the basis therefor. An affidavit or declaration not in compliance with this rule may be stricken in whole or in part.

L. R. 7.5.

In this case, however, many of the key assertions set forth in Plaintiff's so-called "Statement of Undisputed Facts" are irrelevant to the issues of the case and are included only to mislead. Many other assertions Plaintiff labels "undisputed" remain unsupported by a credible, admissible declaration or a reference to the record and, therefore, should be stricken. Indeed, the declarations upon which Plaintiff relies violate Local Rule 7-5 and Fed. R. Civ. P. 56(e) because they contain several statements that are not based on personal knowledge and/or constitute speculative conclusions rather than factual assertions. (*See, e.g.*, Woo Dec. ¶¶ 4, 5; Carlos Dec. ¶ 8; Ye Dec. ¶¶ 2, 3, 4, 6, 12; Terzakis Dec. ¶¶ 7, 24, 25.) Moreover, many of Plaintiff's facts have been contradicted by the supporting declarant's own deposition testimony. Without the proper evidentiary foundation, Plaintiff cannot meet his burden of proving coverage under the 2004 Vesta policy, and his arguments in support of summary judgment cannot stand.

### C. <u>Plaintiff's Pending Motion is Based on Disputed Material Facts</u>

Plaintiff's "Statement of Undisputed Facts" is supported by declarations of several witnesses, including John Terzakis, Peter Ye, Susan Woo, and Kristine Carlos. Many of the statements contained in Plaintiff's brief, and in the declarations attached thereto, are entirely inconsistent with both the deposition testimony of these witnesses and the documents attached to the declarations offered in support of Plaintiff's Pending Motion. Because Plaintiff made no

effort to conform his Pending Motion, declarations offered in support, and "Statement of Undisputed Facts" to the facts obtained during the course of discovery, his Pending Motion is riddled with clearly disputed facts and, therefore, must be denied. The more egregious examples of factual inconsistencies contained in Plaintiff's Pending Motion are set forth below.

### 1. The Vesta Operating Agreement Does Not Establish Terzakis' "Exclusive Domination and Control" Over Vesta

Plaintiff asserts that, based on a 51% ownership interest in Vesta through his company B&B Sparco Properties, Inc., "Terzakis had exclusive dominion and control over Vesta as the majority owner of Vesta," pursuant to the Vesta Operating Agreement. (*See* Pl.'s Pending Mot., at 8-9, ¶¶ 6, 7) (*citing* Terzakis Dec. Ex. 5.) Plaintiff goes on to misquote the relevant language of the document attached as Exhibit 5 to the Terzakis Declaration to give the impression that the agreement actually appoints the majority shareholder as the manager when, in fact, the document attached to the Terzakis Declaration says no such thing. (*Id.*) The material differences are reflected in the side-by-side comparison below:

| Language as Quoted by Plaintiff: | Language in Terzakis Dec. Exhibit 5 : |
|---|---|
| **3.3 Management**<br>The Company shall be managed by the Member ***who has the majority of ownership*** [Terzakis], who may unilaterally act behalf of the Company with or without a meeting and regardless of any financial interest the Member may have in such action. | **3.3 Management**<br>The Company shall be managed by the Member ***so designated***, who may unilaterally act behalf of the Company with or without a meeting and regardless of any financial interest the Member may have in such action. |
| **3.4 Management Rights**<br>No person shall have any duty or obligation to | **3.4 Management Rights**<br>No person shall have any duty or obligation to |

| | |
|---|---|
| inquire into the authority or power of the Manager [Terzakis] regarding the Manager's actions on behalf of the Company. | inquire into the authority or power of the Manager regarding the Manager's actions on behalf of the Company. |

(*Contrast* Pl.'s Pending Mot., at 8-9, ¶ 7 [emphasis added], *with* Terzakis Dec. Ex. 5, ¶¶ 3.3, 3.4 [emphasis added].)

Notably, two different versions of a Vesta Operating Agreement were produced in discovery: 1) Exhibit 5 to the Terzakis declaration; and 2) Exhibit 40 to Terzakis' deposition. (*See* Declaration of Eileen King Bower in Opposition to Plaintiff's Motion for Summary Judgment ["Bower Dec."], Exs. 4 and 5.) One version states that Terzakis' company, B&B Sparco, has a 51% interest in Vesta and the other states that B&B Sparco has only a 49% interest. (*Compare* Bower Dec. Ex. 4, *with* Bower. Dec. Ex. 5.) Plaintiff has failed to offer any admissible evidence to establish that any version of the operating agreement is accurate. Moreover, the document actually attached to the Terzakis declaration does not even support Plaintiff's contention that Terzakis was manager of Vesta. Based upon the conflicting and confusing record on this point, Plaintiff cannot rely on an operating agreement to establish that Terzakis had exclusive dominion and control over Vesta.

**2. Plaintiff's Assertion that Terzakis and Robert Estupinian Together Exerted "Exclusive Control" Over Vesta And Directed Its Affairs Is Contradicted By Terzakis' Own Deposition Testimony**

Plaintiff relies on the affidavits of Terzakis and Peter Ye to support his contention that Terzakis and Robert Estupinian actively worked together to control Vesta, "directing the affairs of Vesta and making all significant management decisions related to Vesta." (Pl.'s Pending Mot., at 9, ¶ 11) (*citing* Ye Dec. ¶ 4; Terzakis Dec. ¶ 4.) He goes on to suggest that Ginny Estupinian "spent very little time working at Vesta," intimating that her title of President carried no responsibility. (Pl.'s Pending Mot., at 9, ¶ 12) (*citing* Ye Dec. ¶¶ 4, 13.) While Plaintiff cites to the Terzakis and Ye Declarations to support these assertions, the witnesses' deposition testimony contradicts these statements. Terzakis testified that his role at Vesta was that of a



TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

hands-off investor, who used Vesta as a source of mezzanine financing. (Bower Dec. Ex. 3 ["Terzakis Dep."], at 27:5-24, 56:2-12.) He further stated that he left the day-to-day operations not only to Robert Estupinian, but also to Ginny Estupinian (then Ginny Hillig) and Peter Ye. (*Id.* at 63:1-22.) Terzakis' perception was that Ginny had real responsibilities at Vesta, particularly with respect to insurance. (*Id.* at 105:6-107:10.) In his 30(b)(6) deposition, Ye testified that Ginny held numerous significant roles within the company. (Bower Dec. Ex. 1 ["30(b)(6) Dep."], at 28:15-24 [Ginny was an owner]; 38:3-11 [Ginny helped oversee the process of receiving exchange funds]; 100:11-22 [Ye reported to Ginny]; 114:11-24 [Ginny had online access to Vesta bank accounts]; 265:20-266:2 [Ginny was a signatory on Vesta bank accounts]; 391:23-392:1 [Ginny was one of the people "in control of Vesta"].) Thus, the record belies Plaintiff's attempt to erase the significant roles others besides Terzakis and Robert Estupinian – most notably Ginny Estupinian – played at Vesta.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

### 3. Plaintiff Has Offered No Admissible Evidence to Prove that Vesta Exchanger Funds Were Transferred to Terzakis During the 2004 Vesta Policy Period

Plaintiff relies on a summary chart created by his counsel, Hollister and Brace, to prove that Terzakis "embezzled" $9.3 million in Vesta client exchange funds during the 2004 Vesta Policy period" (January 9, 2004 through August 15, 2004). (Pl.'s Pending Mot., at 12, ¶ 26.) Specifically, Plaintiff contends that, in a series of transactions from January 21, 2004 to June 24, 2004, Terzakis (with the assistance of Estupinian and Ye) embezzled Exchange Funds deposited by the Vesta Exchangers in the accounts Vesta used at Borel Bank. (*Id*.) Plaintiff's summary is not admissible, however, because it is not supported by the testimony of Terzakis or Ye or the information upon which it is allegedly based. *See* Fed. R. Evid. 1006 (2012) (a party may use a summary or chart, but only to prove the content of voluminous writings, and it must make the originals available for examination).

For example, Plaintiff relies on paragraphs 5 through 8 of the Ye Declaration to show that Ye transferred Vesta exchanger funds to Terzakis in 2004. In his declaration, Ye states that he relied on a spreadsheet attached as Exhibit 2, which he claims "lists the Vesta Exchange Funds

that I wired out to Single Site, Midwest Properties, and Investment Advantage Group under the direction of Estupinian and Terzakis." (Ye Dec. ¶ 7.) (*See also* Bower Dec. Ex. 2.) While Ye testified in his Declaration that Exhibit 2 is an "accurate accounting of the inflows and outflows of Exchange Funds to and from Terzakis except for a January 21, 2004 transfer," ***id.***, during his deposition, Ye admitted that Exhibit 2 "is inaccurate for the period March 2nd, 2004, I guess, until 10/4/07." (Bower Dec. Ex. 6 ["Ye Dep."], at 68:20-21.)

Moreover, Ye admitted that Exhibit 2 does not reflect outbound wires of Vesta exchanger funds and that he did not keep any records that would reflect the "outbound banking institution." (Ye Dep., at 65:5-7.) In fact, he admitted that he did not track the source of the outbound wires allegedly reflected in Exhibit 2 to the Ye Declaration, stating, "[u]nfortunately, the only thing that I didn't track, which I should have, is the outbound banking institution." (*Id.*) He further admitted that he was not aware of any documentation that would reflect the source of funds he allegedly wired. (*Id.* at 65:8-20.) Thus, there is no way to know today the source of funds allegedly wired to Terzakis in 2004:

> [by Ms. Bower] Q: [. . .] So this document [Exhibit 2 to Ye's Declaration] does not reflect where the wires – where the money that you say was wired came from, does it?
>
> [By Mr. Ye] A.: Correct.
>
> Q. Is there any documentation that you maintain that would reflect the – the source of the funds you wired; in other words, where the wire originated from that you say is reflected on Exhibit 2?
>
> A. No.
>
> Q. So how do we know today where those monies came from?
>
> A. We don't.

(*Id.*)

This is fatal to Plaintiff's claim that millions in Vesta exchange funds were "embezzled" during the 2004 Policy Period. As set forth in further detail in the Continental Motion, Vesta was at least the third iteration of a QI owned, at least in part, by Terzakis and Estupinian. (Continental Mot., at 6.) Although Vesta may have been created in January 2004, Plaintiff has offered no admissible, credible evidence to prove that exchangers actually deposited monies with Vesta

during that time frame. In fact, in his deposition, Peter Ye acknowledged that Vesta did not open bank accounts in its name until August 2004. (Ye Dep., at 121:5-21.) Before that time, to the extent Vesta deposited exchange funds into a bank account, such monies would have been deposited into bank accounts in the name of IAG 1031, a QI that was also owned by Terzakis and Estupinian. (*Id*.) Thus, in the early days of Vesta, in 2004, there would be no way to tell if monies in a pooled account were monies from IAG 1031 or Vesta exchangers. (*Id*. at 61:13-23.) In fact, Ye admitted as follows:

> Q. So as you sit here today, do you know if monies that you say were wired from Borel Bank accounts were monies that were from IAG 1031 exchangers or from Vesta exchangers in 2004?
>
> A. I don't.
>
> Q. There's really no way to tell that, is there?
>
> [Objection]
>
> Q. Well, there's no way to tell that by looking at this document [Exhibit to the Ye Dec.], is there?
>
> A. That's correct.
>
> Q. Because the funds were swept into a pooled account, there really would be no way to tell if monies that were wired out of the pooled account originated from IAG 1031 exchangers or from Vesta exchangers in 2004?
>
> A. Correct.

(*Id.*, at 70:5-24.)

Finally, Ye admitted that Exhibit 2 reflected some, but not all, of the payments that Terzakis made to exchangers:

> [by Ms. Bower] Q: [. . .] [A] settlement was reached with Hoist whereby Mr. Terzakis paid Hoist money so that the exchange could close; is that right?
>
> [By Mr. Ye] A. I believe that's correct, yes.
>
> Q. But that settlement in the amount that Mr. Terzakis paid is not reflected on Exhibit 2, is it?
>
> A. No.
>
> Q. So Exhibit 2 does not reflect all of the payments back by Mr. Terzakis into Vesta; is that right?
>
> A. Correct.

Q. It's – it's missing at least the Hoist payments back; correct?

A. Yes.

Q. Was there also an exchange by Mr. Phillips that did not fund on time in fall of 2007?

A. That sounds familiar.

Q. Right around the time of the Hoist exchange; correct?

A. I believe so.

Q. And did Mr. Terzakis end up paying money to close that exchange?

A. I don't recall exactly.

Q. Is the Phillips exchange reflected here on Exhibit 2 anywhere?

A. No.

Q. So Exhibit Number 2 doesn't include all of the payments that Mr. Terzakis made back into Vesta; correct?

A. Yes.

(*Id.*, at 66:22-68:2.)

The only link Plaintiff offers to connect "Vesta" exchanger monies to wires allegedly sent by Ye to Terzakis during the 2004 Vesta Policy Period is the information set forth in Exhibit 2 to Ye's Declaration. Because Ye admitted that Exhibit 2 is not accurate and does not reflect Vesta monies, Plaintiff has failed to establish through undisputed facts that Vesta Exchange Funds were "embezzled" during the 2004 Vesta Policy period.

**4. Plaintiff's Straw Man: No One Could Have Stopped Terzakis and Robert Estupinian From Improperly Transferring Exchange Funds**

In an apparent attempt to muddy the waters on the issue of adverse domination, Plaintiff goes to some effort to posit the irrelevant proposition that the non-wrongdoing employees of Vesta were not able to stop the improper transfers carried out by Terzakis and Robert Estupinian. As set forth in the Continental Motion, the relevant question for purposes of the adverse domination analysis is whether a Vesta employee could have discovered (not prevented) the improper transfers of Exchange Funds that Plaintiff claims constitutes the loss he seeks to recover. (*See* Continental Mot., at 23-25.) The practice of borrowing exchange funds was open,

obvious and documented by Vesta employees. In fact, Terzakis admitted that there was no attempt to hide the fact that he was taking loans of exchanger funds:

> [Ms. Bower]: Q. Did you feel the need to keep it - - keep it a secret from Ginny that you were taking loans of exchanger funds?
>
> [Mr. Terzakis]: A. A secret?
>
> Q. Correct.
>
> A. There was no secret about what I was doing anywhere, in my office, through documentations, tax returns.
>
> Q. This is something that everybody knew, everybody at Vesta and Single Site know that - - that you were taking loans of exchanger funds; right?
>
> A. Yes, ma'am.
>
> Q. There was no attempt to hide it from anybody; right?
>
> A. Nope.

(Terzakis Dep., at 108:10-24.) Terzakis' deposition testimony makes clear that the transfers were open and obvious to anyone in the company, and thus, anyone at Vesta could have discovered them.

Nevertheless, Plaintiff asserts that neither the employees of Vesta nor Vesta itself had the power to stop Terzakis and Robert Estupinian from using Exchange Funds for their own personal investments. (Pl.'s Pending Mot., at 10, ¶¶ 13-14.) In addition to being irrelevant, this statement is not supported by the factual record. Plaintiff attempts to illustrate this proposition by citing the declarations of two Vesta employees, Susan Woo and Kristine Carlos, who testified in their declarations that they would only have quit their jobs had they discovered any illegality in the operations of Vesta. (*Id*. at 11, ¶¶ 18-21) (*citing* Carlos Dec. ¶¶ 6-8; Woo Dec. ¶¶ 1, 4, 6.) In their depositions, however, both Woo and Carlos testified that they could and would have done more, including going to the police, if they had proof of any wrongdoing. (Bower Dec. Ex. 7 ["Woo Dep."], at 41:3-22) (admitting that she could have told her husband, an attorney, a salesperson at Vesta, and the police if she had proof of illegal activity.) (*See also* Bower Dec. Ex. 8 ["Carlos Dep."], at 52:10-22) ("If I had evidence, then I probably would have…Q: You probably would have gone to the police? A: Would have gone to the police, yes.") Thus, Plaintiff's own witnesses, Carlos and Woo, have contradicted their declarations in subsequent

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

depositions. Plaintiff cannot rely on them to support his statement of facts.

Curiously, Plaintiff also asserts that Peter Ye was prevented from discovering or preventing the alleged illegal transfers of Exchange Funds because he allegedly believed that the Vesta Exchange Agreements permitted such transfers. (Pl.'s Pending Mot., at 10, ¶¶ 15-16.) As Plaintiff points out in the very same "Statement of Undisputed Facts," however, the very Exchange Agreements attached to Ye's Declaration actually forbade transfers to personal accounts by requiring that the monies be placed in a Qualified Exchange Trust. (*Id.* at 15-16, ¶¶ 36-37) (*citing* Ye Dec.¶ 13.) Apparently, Plaintiff would have the Court believe that Peter Ye only had access to part of the Exchange Agreements. Notably, Plaintiff has failed to lay a proper foundation with respect to the Exchange Agreements and, in fact, the document attached to Ye's Declaration cannot possibly be relevant to this Motion, as it is an Exchange Agreement dated April 7, 2008, years after the Vesta Policy expired. Plaintiff has failed to submit any evidence of actual Vesta exchange agreements executed during the 2004 Vesta Policy period.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**5. Plaintiff's Assertion That No One But Terzakis and Robert Estupinian Had Authority to Contact the Insurer On Behalf of Vesta Is Not Supported By the Record**

Plaintiff contends that no employee of Vesta aside from Terzakis and Robert Estupinian had authority to make a claim for insurance coverage on behalf of Vesta. (Pl.'s Pending Mot., at 11, ¶ 22) (*citing* Ye Dec. ¶ 12). This statement is contradicted by the deposition testimony of Plaintiff's own witnesses. First, Ye testified in his deposition that he did not know whether or not Ginny Estupinian had authority to make an insurance claim. (Ye Dep., at 88:9-89:1.) In his deposition, Terzakis also contradicted the notion that he shared exclusive authority over insurance with Robert Estupinian. In fact, Terzakis admitted that he had nothing to do with fidelity insurance while he was associated with Vesta. (Terzakis Dep., at 196:8-15.) He never even saw the 2004 Vesta Policy until sometime in 2010 when he was in jail. (*Id.* at 194:6-22.) Terzakis further admitted that Ginny Estupinian was the point person for Vesta when it came to applying for insurance and communicating with insurers. (*Id.* at 105:13-106:2.) Terzakis testified as follows:

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

> Q. She - - she was president of Vesta, though; correct?
> A. Oh, yes, she was.
> Q. Okay. And as president of Vesta, did you understand that she had certain duties and responsibilities with respect to Vesta?
> A. Surely.
> Q. Did you understand that her duties and responsibilities including signing applications for insurance on behalf of Vesta?
> A. I would assume so, yes.
> Q. And her duties and responsibilities included communicating with insurance brokers on behalf of Vesta?
> A. I would - - would agree with that too.

(*Id.*)

Because Plaintiff's motion rests upon the unsound foundation of the contradicted, unsupported, or otherwise unreliable assertions set forth in Plaintiff's "Statement of Undisputed Facts," Plaintiff's Pending Motion should be denied on that basis alone.

**D. Law of the Case Doctrine Does Not Apply**

The law of the case doctrine does not allow Plaintiff to bypass his burden of proof in this case. Plaintiff contends that two orders issued by Judge Ware "set forth the law in this case against Continental": (1) the Continental MTD Order, which denied Continental's Motion to Dismiss in this case; and (2) the Order Denying Plaintiff's Motion to Dismiss Counterclaim in a related but separate action to which Continental is not a party, *United States Fire Ins. Co. v. Vesta Strategies, LLC*, Case No. 5:09-cv-02338-JW (the "U.S. Fire MTD Order"). (Pl.'s Pending Mot., at 3-5.) (*See also* Dkt. No. 75-3.) Because the scope of the Court's findings in these orders was limited to the question of whether Plaintiff had adequately pled a theory that could survive motions to dismiss, the law of the case doctrine does not apply to either order. Moreover, because Continental was not a party to the *U.S. Fire* action at the time the motion to dismiss in that case was briefed, Plaintiff's attempt to use the U.S. Fire MTD Order to bind Continental and this Court in this separate case is particularly inappropriate.

The law of the case doctrine provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *Pepper*

*v. United States*, 131 S. Ct. 1229, 1250, 179 L. Ed. 2d 196 (2011). The doctrine furthers the principle that in order to maintain consistency during the course of a single lawsuit, reconsideration of legal questions previously decided should be avoided. *City of L.A. v. Santa Monica BayKeeper*, 254 F.3d 882, 888 (9th Cir. 2001). If, however, the issue is not actually decided in the prior proceeding, the law of the case doctrine does not apply. *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995); *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995) (doctrine does not extend to decisions not addressed by court); *Estate of Gonzales v. Hickman*, 2007 U.S. Dist. LEXIS 83702, at *15-16 (C.D. Cal. Apr. 13, 2007) ("The law of the case acts as a bar only when the issue in question was actually considered and decided by the first court."). Furthermore, the law of the case doctrine is discretionary, and courts have used this discretion to reconsider issues when there are later developments in the proceedings. *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 602 (9th Cir. 1991) (court would not construe the law of the case to prevent a district court from exercising its discretion to reassess evidentiary rulings in light of later developments in the proceedings); *Continental Lab. Prods., Inc. v. Medax Int'l, Inc.*, 1999 U.S. Dist. LEXIS 15383, at *12-13 (S.D. Cal. Aug. 12, 1999) (finding that the doctrine of law of the case did not prevent district court from revisiting an issue because parties extensively rebriefed the issue and presented arguments they did not present at the time the court issued its previous orders).

Plaintiff mischaracterizes the contents of the Continental MTD Order as an actual dispositive resolution of certain key issues: (1) whether Dillon can establish a loss during the relevant policy period; and (2) whether adverse domination should be applied given the factual circumstances of this case. (Pl.'s Pending Mot., at 3-4.) The Continental MTD Order, which merely addressed whether the allegations of the Complaint were sufficient to survive a motion to dismiss, does not go nearly so far as to issue dispositive rulings on the aforementioned issues. With regard to the first issue, the Court found only that the Plaintiff "has sufficiently alleged the occurrence of a covered loss during the discovery period[.]" (Continental MTD Order, at 8.) The Court did not find that Plaintiff had actually proven his theory of loss. Indeed, as set forth in the Continental Motion, the facts obtained during the course of discovery are inconsistent with the

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

allegations of loss that allowed Plaintiff to survive Continental's motion to dismiss. (Continental Mot., at 14-19.) Specifically, although Plaintiff alleged that Terzakis and Estupinian ran a hidden Ponzi scheme, the facts revealed that Terzakis agreed to fund Vesta so that he could use it as a form of "mezzanine financing," which would allow him to take loans of Exchangers Funds. The loans did not result in an immediate loss to Vesta. Rather, California courts have recognized that improper "loans" did not constitute a loss unless or until there is an inability to pay. (*Id*. at15-16) (citing ***Pacific-Southern Mortgage Trust Co. v. Ins. Co. of North America***, 166 Cal. App. 3d 703, 701-11 (1985); ***Fidelity Savings & Loan Ass'n v. Aetna Life & Cas. Co.***, 647 F.2d 933, 936-37 (9th Cir.1981); ***see also Fremont Reorganizing Corp. v. Federal Ins. Co.***, No. SACV 09-01208, 2010 U.S. Dist. LEXIS 14675, at *13, *15-16 (C.D. Cal. Jan. 5, 2010)). Terzakis had the ability to pay any loans taken during the Vesta Policy period. He became unable to pay in late 2007/2008 when his personal assets evaporated due to steep decline in the real estate market. (Continental Mot., at 11.)

Likewise, with respect to adverse domination, the Court only found that Plaintiff had alleged a theory of adverse domination that, "if proved," could allow Plaintiff to prevail. (Continental MTD Order, at 11.) For numerous reasons set forth in the Continental Motion, discovery has revealed that Plaintiff cannot prove his theory of adverse domination. (***See*** Continental Mot., at 19-25.) Specifically, the legal and policy justifications for the doctrine of adverse domination are not present in the facts of this case because the element of adversity is missing and the nature of the 1031 industry precludes long-term hidden losses. (***Id.*** at 20-22.) Furthermore, Plaintiff's alleged "loss" was not hidden and could have been discovered by non-wrongdoing employees. (***Id.*** at 23-25.) Plaintiff cannot avoid its burden of proof by recasting the Court's findings from an order on a motion to dismiss as conclusive determinations of key issues. Consequently, the law of the case doctrine does not apply as the Plaintiff suggests.

In addition, Dillon cannot invoke the law of the case doctrine in this case based upon an order issued in the ***U.S. Fire*** case. The law of the case doctrine only applies to an issue previously decided by the same court, or higher court, ***in the identical case***. ***Manufactured Home Communities, Inc. v. County of San Diego***, 655 F.3d 1171, 1181 (9th Cir. 2011) (emphasis

added). Despite the fact that Continental had already been dismissed from the *U.S. Fire* case and thus did not file any briefing on U.S. Fire's motion to dismiss, Plaintiff attempts to bind Continental (and this Court) by the findings set forth in the U.S. Fire MTD Order with respect to whether public policy precludes the application of adverse domination in this case. (Pl.'s Pending Mot., at 5.) If Continental had submitted a brief on this issue, it certainly would have directed the Court to *Clemmer v. Hartford Insurance Co.*, 22 Cal. 3d 865, 889-90 (1978) and *J.C. Penney Cas. Ins. Co. v. M.K.*, 52 Cal. 3d 1009, 1028-29 (1991). As set forth in the Continental Motion, these decisions refute Plaintiff's contention that the public policy against insurance for the willful acts of the insured does not apply if the bad actors do not recover the proceeds. (Continental Mot., at 13-14.) In *Clemmer*, the California Supreme Court stated, "Plaintiffs' contention that innocent victims of intentional torts should be able to recover from an insurer without regard to the willfulness of the insured clearly runs contrary to the policy expressed in Insurance Code section 533." *Clemmer*, 22 Cal. 3d at 889-90. The law of the case doctrine simply does not provide grounds to deny Continental the opportunity to raise this argument for the first time in this case.

**E. <u>Plaintiff's Pending Motion Must Be Denied For Reasons Set Forth in Continental's Pending Motion</u>**

The arguments and undisputed facts set forth in the Continental Motion, filed on August 31, 2012, are incorporated by reference herein. The arguments provide additional reasons why Plaintiff's Pending Motion must be denied.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## III. CONCLUSION

For the reasons set forth herein and those already addressed in the Continental Motion, Plaintiff's Pending Motion must be denied.

Dated: October 9, 2012

Respectfully submitted,

TROUTMAN SANDERS LLP

BY: /s/ Eileen King Bower
Ryan C. Tuley
Eileen King Bower
Brian P. Cummings
*Attorneys for Defendant Continental Casualty Company*

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545