Robert L. Brace, SBN 122240
Email: rlbrace@hbsb.com
Michael P. Denver, SBN 199279
Email: mpdenver@hbsb.com
Peter L. Candy, SBN 149976
Email: pcandy@hbsb.com
**HOLLISTER & BRACE**
P.O. Box 630
Santa Barbara, CA 93102
Telephone: (805) 963-6711
Facsimile: (805) 965-0329

Attorneys for Thomas Dillon, as Court-Appointed
Receiver for Vesta Strategies, LLC
and Excalibur 1031 Group LLC

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| THOMAS DILLON, as Court-Appointed Receiver for Vesta Strategies, LLC and Excalibur 1031 Group, LLC<br><br>Plaintiff,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY, an Illinois corporation,<br><br>Defendant. | **Case No.: C 10-5238-EJD**<br>**Related Case No.: C 09-2388-JW (Closed)**<br><br>**THE RECEIVER'S RESPONSE TO OBJECTION TO REQUEST FOR JUDICIAL NOTICE; DECLARATION IN SUPPORT** |

Plaintiff Thomas A. Dillon, the Court-appointed Receiver for Vesta Strategies, LLC and Excalibur 1031 Group, LLC (the "Receiver") respectfully submits his response to the objection filed by Defendant Continental Casualty Company ("CNA") to the Receiver's Request for Judicial Notice (Dkt. No.126) in support of the Receiver's summary judgment motion (Dkt. No. 75) and oppositions (Dkt. Nos. 91 and 98) to the cross-motion filed by CNA.

Receiver intended to submit various CNA policies at the hearing on July 26, 2013, which was cancelled.

In its objection (Dkt. No. 127), CNA argued that the Receiver's request did not support the proposition that CNA provided identical coverage in the two other insurance coverage cases involving owner theft of client exchange funds.[1] CNA is representing to the Court that it did not issue identical policies in the other coverage cases. CNA's contention is false. The Court may review the identical policies that include identical FEA endorsements and which are attached as **Exhibits 2-5**.

The monies recovered by enforcing the policies will be paid to the Exchangers and not to the criminals who stole the money. The payment to the Exchangers is in conformity with CNA's argument proffered in the Okun bankruptcy matter,[2] as set out in **Exhibit 1**.

DATED this 2nd day of August, 2013

Respectfully submitted,

/s/ Robert L. Brace

Robert L. Brace, Esq., SBN. 122240
Michael P. Denver, Esq., SBN 199279
Peter L. Candy, Esq., SBN. 149976
**HOLLISTER & BRACE**
P.O. Box 630
Santa Barbara, CA 93102

Attorneys for Thomas Dillon, as Court-Appointed Receiver for Vesta Strategies, LLC and Excalibur 1031 Group LLC

---

[1] *SCCAA Holdings, LLC v. Brown & Brown of California, Inc.*, United States District Court for the District of Nevada, Case No. 2:07-cv-00536-RCJ-LRL (the "Southwest Exchange Case") and *In Re: Edward H. Okun Internal Revenue Service § 1031 Tax Deferred Exchange Litigation*, MDL No. 2028, United States District Court for the Northern District of California, Case No. 5:07-cv-02795-JW (the "Okun Case).

[2] *In re: The 1031 Tax Group, LLC*, U.S. Bankruptcy Court Case No. 07-11448 (MG).

**DECLARATION OF ROBERT L. BRACE**

I, Robert L. Brace, do declare as follows:

I am a member of the law firm of Hollister & Brace ("H&B"), counsel of record for Thomas A. Dillon ("Dillon"), the Court-Appointed Receiver for Vesta Strategies, LLC ("Vesta") and Excalibur 1031 Group LLC ("Excalibur"). I have personal knowledge of the matters set forth in this declaration and if called as a witness, I would competently testify as follows:

1. Attached hereto as **Exhibit 1** is a true and correct copy of a document filed by CNA in the Edward Okun bankruptcy litigation entitled *In re: The 1031 Tax Group, LLC,* U.S. Bankruptcy Court Case No. 07-11448 (MG) (the "Okun Bankruptcy Matter"), wherein CNA acknowledges that exchange funds are held in trust, and they must be segregated from the general assets of the qualified intermediary ("QI") and used exclusively to pay 1031 Exchanges.

2. Attached hereto as **Exhibit 2** is a true and correct copy of the policy issued by Continental ("CNA") to Vesta for the period of 8/15/2003 to 8/15/2004, Policy No. 267920538.

3. Attached hereto as **Exhibit 3** is a true and correct copy of the policy issued by CNA to Excalibur for the period of 8/15/2005 to 8/15/2006, Policy No. 268100958.

4. CNA argues that it is against public policy (Insurance Code § 533) for insurance proceeds to go to the owners of Vesta, John Terzakis and Robert Estupinian (who stole the money) and not to the Exchangers. The Receiver agrees and will pay the Exchangers from the proceeds of this litigation. In the other insurance coverage cases involving CNA where I have represented other 1031 Exchangers, we settled with CNA (based on crime policies issued by CNA to the qualified intermediaries that contain <u>identical</u> FEA endorsements) and the settlement proceeds went to the court-appointed Receiver, or to the qualified settlement fund ("QSF") Trustee, who was charged with distributing the funds to the Exchangers.

5. In my other insurance coverage cases, the proceeds paid by CNA never went to the criminals, in conformity with CNA's own position in the Okun Bankruptcy Matter. Therefore, enforcement of CNA's policies is not in violation of public policy.

6. In the Southwest Exchange[3] case, I represented a class of exchangers whose 1031 exchange funds were stolen by the owner of Southwest Exchange (Donald McGhan) during the policy period. The thefts were covered under the crime policy CNA issued to Southwest Exchange. Attached as **Exhibit 4** is a true and correct copy of the policy which CNA issued to Southwest Exchange for the period of 8/15/2004 to 8/15/2005, Policy No. 268026358. This policy is the same as the policy issued by CNA to Vesta and Excalibur. All of the policies attached contain endorsements by the Federation of Exchange Accommodators ("FEA Endorsements") covering owner theft of client funds.

7. When we settled with CNA in the Southwest Exchange Case, the settlement proceeds went to the court-appointed Receiver of Southwest Exchange who distributed the money to the Exchangers. The money did not go to the criminals who stole the exchange funds.

8. In the Okun case,[4] I represented a class of exchangers whose Exchange Funds were stolen by the owner of The 1031 Tax Group (Edward H. Okun) during the policy period. The thefts by Okun were covered under a crime policy CNA issued to The 1031 Tax Group. Attached hereto as **Exhibit 5** is a true and correct copy of the policy issued by CNA to The 1031 Tax Group for the period of 8/15/2006 to 8/15/2007, Policy No. 268117856.

9. When we settled with CNA in the Okun matter, the money went to the Trustee, who was ordered by the class action court to distribute the settlement proceeds to the Exchangers. The money did not go to the criminals who stole the exchange funds.

10. The CNA policies in the Vesta, Okun and Southwest Exchange cases all contained identical FEA Endorsements which covered owner theft of client exchange funds. CNA's contention that the policies are not the same is false.

---

[3] *SCCAA Holdings, LLC v. Brown & Brown of California, Inc.*, United States District Court for the District of Nevada, Case No. 2:07-cv-00536-RCJ-LRL.

[4] *In Re: Edward H. Okun Internal Revenue Service § 1031 Tax Deferred Exchange Litigation*, MDL No. 2028, United States District Court for the Northern District of California, Case No. 5:07-cv-02795-JW.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and to the best of my personal knowledge.

DATED this 2nd day of August, 2013

/s/ Robert L. Brace
Robert L. Brace